Robert GONZALES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17814.

Court of Criminal Appeals of Oklahoma.

March 13, 1973.

Lyle Burris, Eufaula, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Amy Hodgins, Legal Intern, for appellee.

## OPINION

PER CURIAM:

Appellant, Robert Gonzales, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of McIntosh County, Case No. F–71–68, for the crime of Possession of LSD, under the provisions of 63 O.S. § 402. He was sentenced to serve a term of five (5) years in the state penitentiary in accordance with the verdict of the jury and a timely appeal has been perfected to this Court.

The defendant Gonzales and defendant Jerry Maes were tried conjointly for possession of LSD. Defendant Jerry Maes was acquitted by the jury. The appellant urged a motion to suppress and dismiss at the preliminary hearing on the grounds of illegal search and seizure, which was overruled. Appellant also urged a motion to suppress at trial outside the hearing of the jury and the same was overruled. It should be noted that appellant also filed a motion to suppress on the grounds of illegal arrest which was overruled. However, appellant does not contend that the arrest of defendant was illegal on this appeal. Therefore, for purposes of this appeal, the arrest of the defendant is presumed valid.

On Saturday, October 2, 1971, Highway Patrolman Don Brewer stopped the defendant's car for speeding on Interstate Highway 40. The defendant did not immediately get out of the car, but looked in the console between the seats of the car. Brewer then radioed in for a license tag check because he thought the car might have been stolen. The defendant emerged from the car carrying a leather pouch and Brewer told the defendant to put the pouch back in the car. The defendant complied with the request after saying that he wanted to show his vehicle registration to Brewer. Brewer issued the defendant a citation for speeding, secured his license as bond, and released the defendant who proceeded east on I–40. Brewer testified that the defendant was quite nervous during the time the speeding citation was being issued and the return on the tag check was negative.

Approximately four minutes after the defendant was released Brewer received a communication by radio that the defendant was AWOL from the Army. Brewer immediately radioed McAlester Headquarters who advised Highway Patrolman Lee Davis to stop the defendant's car because he was wanted for desertion from the Army.

Patrolman Davis arrested the defendants at gunpoint on the exit ramp of I–40 to Highway 69. When Brewer arrived on the scene, Davis had the defendants handcuffed and standing in front of the defend-

ant's car. The defendants were placed in Davis' patrol car. Brewer then searched the defendant's car around the driver's seat and in the car console between the seats and found a steak knife in a leather pouch in the console. Brewer testified that he searched the car at this point because he was curious to see what was in the leather pouch. Brewer also testified that he did not see any contraband visual to his eyes during this first search. Brewer gave the knife to Davis and returned to move the defendant's car from the ramp because traffic had piled up behind the defendant's car. While backing the car, Brewer heard a clinking noise and looked down on the floorboard in front of the passenger's seat. He noticed a vitamin bottle on the floorboard, picked it up, and saw tiny bags of white powder in the bottle. Brewer testified that he did not know exactly what was in the bottle but had suspicions that it could be heroin or some kind of narcotic. Brewer then put the bottle in a sack which was now on the floorboard and pulled the floormat up to the sack to prevent it from rolling around. Brewer finished moving the car out of the line of traffic, returned to Davis' patrol car and called a wrecker from Checotah. Brewer instructed the wrecker driver to inventory the contents of the car and to telephone him at the McIntosh County jail if he found anything suspicious.

The defendants were incarcerated in the McIntosh County jail at Eufaula. Defendant Gonzales was charged with carrying a concealed weapon and being a deserter from the United States Army. Defendant Maes was not actually booked on any specific charge at this time, but was just held for investigative purposes.

Roy Bryson, the wrecker driver, testified that he inventoried the defendant's car and found three bottles and a syringe in a brown paper sack on the floorboard. He placed the sack in the front seat of the defendant's car and called Brewer. Brewer and Davis proceeded to Checotah where the defendant's car was stored and Brewer found the paper sack in the driver's seat.

Brewer testified that he only looked in the glove compartment and did not look under the front or back seat of the defendant's car. Davis testified that he searched the trunk. Brewer placed the sack containing the three bottles and the syringe in his attache case and took the evidence home with him.

The next day, Sunday, October 3, 1971, Brewer took the alleged narcotics to Henryetta where a field test analysis conducted by Highway Patrolman Leon Hudson revealed that the substance was heroin or a derivative of heroin. Brewer testified that he did not determine what the vitamin bottles contained until the chemical test was conducted on Sunday, October 3, 1971.

On October 5, 1971, Brewer went before Judge Warren for the purpose of obtaining a search warrant. The testimony of Patrolman Brewer concerning the affidavit for search warrant appears in the transcript at pages 117–119, as follows:

"Q. Now, Trooper, you went before Judge Warren and made some sworn statements for the purpose of obtaining a search warrant. Is that correct?

"A. I told him what I thought I had found, if that is what you mean. That I had reason to believe.

"Q. Did you tell the Judge you suspected it was Heroin?

"A. Yes sir, I did.

"Q. Did you also tell the Judge that the defendants were stopped for speeding and this was the basis for the search warrant?

"A. It was not the basis for the search warrant.

"Q. What did you put in the affidavit for search warrant?

"A. That I wanted a search warrant because they had been arrested for speeding . . . is that it?

"Q. Yes they had been arrested for speeding and you suspected you had found heroin?

"A. Because there were suspected drugs, but just because they were

speeding doesn't mean they would have any narcotics.

"Q. I will show you a court jacket filed in McIntosh County, Oklahoma filed as Case No. C–71–120 and I will ask you these questions. Did you make the statement to the Honorable Judge Marshall Warren, that the driver Robert Gonzales was arrested for speeding and Jerry Maes was a passenger in the car and defendant Gonzales acted highly nervous. Did you make that statement?

"A. That's correct.

"Q. Based upon that statement and what you believed to be a quantity of Heroin, this is the reason why this search warrant is issued. Is that correct?

"A. No, not because I had arrested him for speeding; not because he was nervous, but because this bottle rolled out from under the seat in my presence, I decided that was a crime committed in my presence, that was the reason I wanted the search warrant."

On further cross-examination Brewer testified that it was at Henryetta when he found out the substance was what he originally believed it to be and this was the basis for the search warrant. After securing the search warrant, Brewer returned to Checotah and thoroughly searched the defendant's car, finding a small clear plastic box containing small bags of white powder under the floormat on the passenger's side of the car.

Brewer then took the contents of the three bottles and the small box to the State Crime Bureau for analysis. William J. Caveney, a forensic chemist employed by the State Crime Bureau, testified that the items submitted by Brewer contained lysergic acid diethylamide (LSD). George Nolan, a chemistry professor at Northeastern State College, testified on behalf of the defendant that the alleged narcotics did not contain LSD.

The defendant's first assignment of error is that the trial court erred in not sustaining defendant's motion to suppress the evidence for the reason that the first search of the defendant's vehicle was invalid and unlawful and that all subsequent searches thereafter were invalid and all evidence seized should have been suppressed. We cannot accept the basic contention of the defendant that the first search was illegal and therefore all subsequent evidence should have been suppressed as tainted evidence of the "fruit of the poisonous tree" because to do so would extend the "fruit of the poisonous tree" doctrine beyond its original intent and application. However, for reasons that follow, it is unnecessary to deal with the defendant's second assignment of error.

As to the first search conducted by Brewer which uncovered the steak knife, it is of no consequence for a proper disposition of this case. The charge of having a concealed weapon was dismissed by the State and the admissibility of the knife was not an issue at the trial, and the subsequent searches that uncovered the evidence in question did not come into the hands of Officer Brewer as a result of his first search that revealed the knife. Brewer testified that he did not see any contraband visible to his eyes during the first search. The record also reveals that Brewer inadvertently saw the vitamin bottle when he was backing the defendant's car and not as a result of anything that he saw or suspicioned during the first search. Thus, the "fruit of the poisonous tree" doctrine is not applicable in this first instance since the evidence in question was not seized because of facts learned from the initial first search. For the sake of clarity, we hold that the first search which uncovered the steak knife was an illegal search and seizure. The only possible basis for justifying this first search is the search incident to a lawful arrest exception as propounded in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and followed in Fields v. State, Okl.Cr., 463 P.2d 1000 (1970). The first

search does not fall within the rule that incident to a lawful arrest, the arresting officer may search person arrested, as well as the immediate area within the person's control for weapons he might be able to reach for or other evidentiary items he might seek to destroy. The rationale behind this rule is to protect the officer from possible harm and to prevent the arrestee from destroying evidence. In the instant case, the defendants were handcuffed and in Officer Davis' patrol car when the first search was conducted and presented no danger to the patrolmen or posed any threat of destroying any evidence.[1] Furthermore, the permissible area of search incident to a lawful arrest is governed by the proximity of the arrestee to the point of the search and the arrestee's access to the place searched while he is in custody of the arresting officer. See *Fields* supra. Again, the defendants were outside of their car and whether they were in the patrol car or standing in front of their vehicle is not particularly material because in their handcuffed state and under the control of patrolman Davis they presented no real danger to the patrolmen, nor posed any threat of destroying evidence that might be found in the car. Brewer's search of the defendant's vehicle was outside the reach and control of the defendants and therefore was clearly outside of the permissible area of search incident to a lawful arrest. Although the first search was illegal, it did not uncover facts leading to the subsequent seizure of the evidence in question, thus rendering that evidence inadmissible "fruits of the poisonous tree".

The defendant next contends that the inventory and search of the defendant's car at the garage in Checotah without a search warrant was invalid and all evidence seized as a result thereof is inadmissible.

█ Could the inventory and search at the garage in Checotah be justified as a "police inventory" of an arrestee's property removing the Fourth Amendment requirements? We believe the answer to this must be in the negative, for it is abundantly clear that Officer Brewer merely suspicioned that the contents of the vitamin bottle were narcotics or dangerous drugs. Even the experts who testified for the State and defense had conflicting opinions as to whether the contents of the bottle were LSD. It is crystal clear, in the instant case, that Officer Brewer merely suspicioned the contents might be narcotics and that his subsequent direction that an inventory search of the vehicle by the garageman was merely a subterfuge, based upon suspicion that there might be narcotic drugs in the car. In any event, the search by a garageman, at the direction of an officer, could not be classified as a "police inventory" since the search was not conducted in the presence of the officer, nor was the garageman deputized. We believe that the terms "police inventory" are susceptible to only one meaning, and that is that the inventory be conducted by an officer of the law (preferably the arresting officer) for the purpose of protecting the contents thereof and for his own protection should he later be sued for misappropriating the contents of the automobile. Both the evidence of the contents of the vitamin bottle and other evidence seized under the subterfuge "police inventory" were illegal and consequently could not form the basis, thereafter, for an affidavit for a search warrant and the issuance of the same.

█ In reaching this conclusion, we do not conclude that ALL "police inventories" are improper, when made for the legitimate protection of the officers conducting such inventory and the owner of the car to prevent the property stored in said vehicle from being stolen or pilfered during the impoundment, or the false claim that the

---

1. Brewer did testify at trial that the defendants were standing in front of their car when he made the first search, although both Brewer and Davis testified at the preliminary hearing that the defendants were in Davis' patrol car during this first search. In any event, the defendants were handcuffed and effectively under the control of Officer Davis thus rendering the search of the defendant's car unnecessary and unwarranted at this juncture.

officers might have stolen property from the vehicle. The mere fact that contraband is discovered during the legitimate "police inventory" without a warrant does not render such inventory inadmissible, but where the "police inventory" is a subterfuge, based on suspicion that contraband might be stored in the vehicle, the discovery of such contraband is inadmissible and the police inventory void *ab initio*.

The defendant lastly contends that the affidavit for search warrant was inadequate, thus rendering the search conducted with a warrant at the garage in Checotah invalid, and the fruits thereof inadmissible. We must agree. Even the most cursory examination of the affidavit for search warrant reflects that it, too, was insufficient to meet the constitutional requirements set forth by this Court and the Supreme Court of the United States under numerous decisions and was based on evidence gathered as a result of the subterfuge "police inventory."

For all of the above and foregoing reasons, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, reversed and remanded with instructions to dismiss.