David Louis PEARSON, Appellant,

v.

The STATE of Texas, State.

No. 2-82-044-CR.

Court of Appeals of Texas,
Fort Worth.

April 6, 1983.

Discretionary Review Refused
July 6, 1983.

---

Barry G. Johnson, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Hamilton O. Barksdale, Asst. Dist. Atty., Forth Worth, for State.

Before FENDER, C.J., and BURDOCK and SPURLOCK, JJ.

## OPINION

SPURLOCK, Justice.

Appellant, David Louis Pearson, appeals from his conviction for burglary of a habitation. V.T.C.A. Penal Code, § 30.02. Pearson was tried by a jury which assessed punishment of fifty (50) years imprisonment.

Pearson asserts, in six grounds of error, that: (1) the evidence was insufficient to support the jury verdict; (2) he was denied due process of law because the victim committed perjury at trial; (3) the trial court erred in admitting into evidence testimony concerning items seized from Pearson's person; (4) the trial court erred in admitting into evidence a list of property seized following a police search of the automobile in which Pearson was riding; (5) the trial court erred in admitting into evidence testimony concerning numerous items seized from the aforementioned automobile, which were not connected to the alleged burglary;

and (6) he was denied due process of law due to the alleged misconduct of the prosecutor in obtaining rulings from the court concerning the admission of the evidence complained of in numbers three through five above.

We affirm.

Because Pearson challenges the sufficiency of the evidence, we must set forth the facts in some detail. On August 27, 1981, George Mann, an employee of the victim, Edward Hajek, was sent to the Hajek residence to investigate a possible burglary. Hajek was known to be out of town. Mann noticed a white four-door Lincoln automobile parked partially in the two car garage. The overhead garage door was resting on the trunk of the car, which was pulled "head first" into the garage. Mann radioed in the license number of the vehicle and then awaited developments in his pickup truck. Suddenly, the garage door was thrown up. As the Lincoln began to exit the garage, the door hit the top of its travel, bounced, and came back down, hitting the Lincoln as it was exiting. The Lincoln struck the center post separating the two garage doors, and pushed this post out approximately one foot. (The door was damaged to the point that it could not be closed.) Mann followed the automobile as closely as he could. Mann observed Pearson lean out of the front window. Pearson looked back at Mann and gestured at him. Mann got a good look at Pearson, viewing not only his face, but his entire upper torso.

Mann saw four persons inside the Lincoln. A chase ensued, and Mann was not able to catch and stop the Lincoln. When Mann gave up the chase, his pickup was traveling at approximately 95 m.p.h. He did broadcast a narration of the preceding events on his mobile radio. This information was relayed to the police dispatcher by telephone. The line was kept open during the entire chase. Mann returned to his workplace after abandoning the chase. At approximately 2:30–2:45 p.m. on the day in question, officers manning the Fort Worth Police helicopter received a radio call telling of a possible burglary in progress, and giving a description of the white Lincoln, which was then eastbound on Loop 820 from Crowley Road and James Avenue, and was being pursued by a white pickup truck. The officer in the helicopter (which also contained a pilot) spotted the Lincoln, which was skidding while making a right turn, and going too fast for such a turn. The Lincoln jumped a curb while making this right turn, and came to rest when it hit a tree near a house on that corner. A backup patrol unit had been called and was enroute to this location at that time. Four persons, two black males and two black females, jumped from the Lincoln. The women ran into an apartment complex nearby, and the men ran behind the above mentioned house. As Officer Eurto's patrol unit arrived, the helicopter still had the black men in sight, and Eurto was directed to a grassy area behind the house. Eurto alighted from his car and arrested Pearson. The helicopter landed, and Officer Key alighted from it and assisted in the arrest of Pearson's companion. The license number of the white Lincoln matched that given the police by Mann. Both Pearson and his companion were advised of their rights. They all returned to the Lincoln to find it still running, in gear, but resting against a tree. The Lincoln was towed away. Eurto collected a large quantity of property from inside the passenger compartment of the Lincoln. Eurto took this property to the police property room, where a list of it was compiled by him, and the property tagged. Several of these items had the name "Lori B. Hajek" upon them. Lori B. Hajek is Edward Hajek's daughter and lived at home. Eurto searched Pearson for weapons and found in his right front pants pocket a gold penknife in a plastic case. He also found and seized a gold pendant watch (Sheffield brand), an Elk's lodge pin with a diamond in it, a lady's gold wristwatch, and a Fort Walton Beach High School ring, 1981, with the initials C.T.A. on it. These items were put in a container, which was marked with Eurto's initials and identification and placed in the police property room. Most of the property found inside the passenger compartment of the Lincoln were

women's clothing or accessories. Two pairs of pants had a laundry tag in them with the name "Hajek" upon it. A purse contained the Austin College student identification card of "Lori B. Hajek". A Stripling's credit card in the name of "Edward H. Hajek" was found inside the Lincoln.

Pearson's first ground of error alleges that the evidence adduced at trial was insufficient to support the jury verdict. His second ground of error asserts a denial of due process due to Hajek's alleged perjury. The two grounds of error relate to the same facts and will be discussed together.

■ Hajek and his wife were out of state at the time of the burglary. Upon their return, they were able to identify several items to the satisfaction of police officers in the property room, and these items were returned to the Hajeks. They included the Elk's pin, lady's gold wristwatch, and a pair of women's pants with a laundry tag pinned to them with the name "Hajek" upon it. Some of the recovered items were claimed by Lisa Shada, who is another of Hajek's daughters. She, in turn, returned the property to Hajek. This property had last been seen by Hajek when he left the state just prior to the burglary.

Hajek testified that it was he who had recovered the Stripling's credit card from the property room. A policeman testified that Lisa Shada, Hajek's daughter, had recovered that card from the property room. Appellant argues that this inconsistency is perjury. We have reviewed the record, and note that Hajek's answers to defense questioning indicate that he was confused and nervous. For instance, Hajek was twice asked if his daughter's name was "Lori J.". He said yes, and then corrected himself, stating her correct name of "Lori Beth". We agree with the State that Hajek's incorrect testimony concerning who retrieved the Stripling's credit card in the name of "Edward H. Hajek" did not constitute perjury. A very great quantity of property was recovered by the Hajek family after the burglary. In the light of the record, we find that Hajek's incorrect testimony was a reasonable mistake, not perjury.

Pearson urges before us *Means v. State,* 429 S.W.2d 490 (Tex.Cr.App.1968), for the proposition that "[r]eversal must also follow if the prosecutor presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false." *Means, supra,* at 494. Our review of *Means* indicates that this quotation should be considered along with the preceding paragraph: "Certainly, we now know, reversal must follow where the *prosecutor deliberately presents* a false picture of the facts by knowingly using perjured testimony." *Means, supra,* at 494 [Emphasis added.].

■ In *Means,* the prosecutor deliberately and knowingly withheld test results, indicating unidentified hairs upon the body of the deceased, from the defense. These test results may have been favorable to the defense. However, in *Means* the court stated that: "The question remains, however, whether the failure to disclose, under the circumstances here presented, calls for reversal." *Means, supra,* at 495. Here, no favorable defense evidence was deliberately withheld by the prosecutor, nor can it be said that the prosecutor deliberately presented a false picture of the facts by knowingly using perjured testimony. After reviewing the evidence in the light most favorable to the jury verdict, we find that any rational trier of fact could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For the reasons stated, ground of error one and two are overruled.

■ Ground of error three contends that the trial court erred in admitting into evidence testimony concerning items seized from Pearson's person. Specifically, Pearson complains of the admission of the items recovered from his pants pocket after his arrest. Pearson filed a motion to suppress these items and others, and was granted a hearing by the court, outside the presence of the jury, on the day of trial. The State indicated it did not intend to offer any

testimony regarding items seized from the person of Pearson. The hearing closed, and the court recessed for the night.

The next morning, still outside the presence of the jury, the State informed the court and Pearson it did intend to offer such evidence. The court continued the hearing on the motion to suppress, and after the evidence was offered, made its ruling. The trial court found the search was valid and legal incident to a lawful arrest. We agree. The items complained of were the products of a valid search incident to a lawful arrest and were properly admitted into evidence. *See Terry v. Ohio,* 392 U.S. 1, 28–31, 88 S.Ct. 1868, 1883–1885, 20 L.Ed.2d 899, 909–911 (1968). Ground of error number three is therefore overruled.

◼ Pearson's fourth ground of error argues that the trial court erred in admitting into evidence a list of property seized following a search of the Lincoln automobile. The list complained of was a list of all the items of property which Officer Eurto recovered from the abandoned automobile subsequent to Pearson's arrest (see delineation of pertinent facts, above). The State said that it would not introduce evidence recovered from the (apparently locked) truck of the automobile. The list was introduced into evidence as past recollection recorded, for the purpose of showing what property was recovered from the *passenger* compartment of the car. Pearson's objections to the introduction of the list as hearsay and prejudicial were overruled. Officer Eurto read only those portions of the list pertaining to items found in the passenger compartment of the car, and the list was admitted only to that extent. The prosecutor stated that she intended to connect at least some of these items up with the burglary. "[A]n automobile may be impounded if the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle." *Benavides v. State,* 600 S.W.2d 809, 811 (Tex.Cr.App.1980, reh. den.) "Inventory searches pursuant to a lawful impoundment were held not to be a viola-

tion of the Fourth Amendment to the United States Constitution. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Thus before the inventory search may be upheld there must be a lawful impoundment. The appellant and his companion were placed under custodial arrest. There was no one to whom the police could have given possession of the automobile." *Daniels v. State,* 600 S.W.2d 813, 814 (Tex.Cr.App.1980). In the instant case, the automobile was abandoned by its occupants and left running in gear resting against a tree upon private property. The two female occupants did not return to the vehicle to assert ownership or control, and both male occupants were placed under custodial arrest. There was no one to whom the police could have given possession of the Lincoln. An inventory search in these circumstances was proper. The search conducted, insofar as the passenger compartment is concerned, was not excessive in scope. The property was found strewn all about the car. "[T]he fact that the inventory search was conducted prior to the automobile being towed rather than at the city pound makes no difference." *Daniels, supra,* at 815. The property was lawfully seized and the list used by the witness to recall exactly what was inventoried was properly admitted into evidence. *See Gordon v. State,* 638 S.W.2d 654, 657 (Tex.App.—Fort Worth 1982). Ground of error number four is therefore overruled.

◼ Pearson's fifth ground of error maintains that the trial court erred in admitting into evidence testimony concerning the items seized from the automobile which allegedly were not "connected" to the burglary. We have reviewed the evidence and testimony and find that certain of the items seized were, in fact, "connected up" to the burglary. Pearson's brief seems to take the position that when an item is identified by the victim of a burglary as that stolen from him, it must be shown that the goods were identical in every way to goods taken from the burglarized place or residence. Pearson's complaint seems to be that the witnesses did not testify that the property was

stolen and was the identical property taken out of Hajek's house. We are unable to agree to the correctness of such a proposition, and are of the opinion that the testimony and evidence established that the property recovered from Pearson's possession was taken from the Hajek residence, and that it was returned to the Hajek family by police. No evidence was introduced which challenged Hajek's identification of items stolen from (and returned to) him. In *Clark v. State*, 115 Tex.Cr.R. 48, 27 S.W.2d 228 (Tex.Cr.App.1930, reh. den.), at 229, the court held that a State's witness' testimony describing property lost at the time of a burglary of his store was not objectionable for his failure to testify that the property was stolen and was the identical property taken from his store. We find that Hajek's identification of his property was sufficient and need not have been more specific. Therefore, Pearson's fifth ground of error is overruled.

Pearson's sixth, and final, ground of error alleges that he was denied due process of law due to the misconduct of the prosecution. Pearson's brief asks us to consider cumulatively the conduct by the prosecution detailed in his previous grounds of error. This is a serious allegation, but not supported by the record. We have overruled the previous grounds of error relied upon as the basis for the allegation in this final ground of error. As an example, Pearson's complaint in his ground of error number three is no more than that the prosecutor changed her mind overnight, and recalled a witness to testify to a personal search of Pearson. This was no more than a continuation of the hearing on the motion to suppress, outside the jury's presence, and worked no hardship upon appellant or anyone else. It was certainly no prejudice to him. Furthermore, our perusal of the record leaves us with no doubt as to the fairness or impartiality of Pearson's trial. Accordingly, we overrule Pearson's sixth ground of error.

The judgment is affirmed.