324 S.E.2d 354

**STATE of West Virginia**

v.

**David D. PERRY, etc.**

No. 16318.

Supreme Court of Appeals of West Virginia.

Dec. 18, 1984.

MILLER, Justice:

This is an appeal from a forfeiture proceeding involving an automobile allegedly used to transport marijuana.[1] Two questions are raised regarding the inventory

---

1. The relevant portion of W.Va.Code, 60A–5–505(a)(4), relating to forfeiture of vehicles used to transport controlled substances, provides:

   "(a) The following are subject to forfeiture:

   *  *  *

   "(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of property described in subdivision (1) or (2)."

Subdivisions (1) and (2) of W.Va.Code, 60A–5–505(a), state:

   "(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this chapter;

   "(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this chapter."

search of the vehicle, which is the means whereby marijuana was found in the locked trunk of the vehicle. First, was the arresting officer required to permit David Perry, the defendant, to make some alternative arrangement to police impoundment of the car? Second, did the police exceed the scope of a valid inventory search by opening the locked trunk of the vehicle? We answer the first issue in the affirmative and decline to address the second.

The underlying facts are not substantially disputed. On November 24, 1983, at approximately eleven o'clock in the evening, David Perry was driving his 1977 Chevrolet automobile on Route 60 in Cabell County. His brother, Paul Perry, was riding as a passenger. Mr. Perry was directed to pull off the highway by Cabell County Deputy Sheriff Gerald Wall, who observed that the defendant's car had a glaring headlight and an expired license plate sticker.

After the deputy stopped the car, he walked to the driver's side and asked David Perry for his driver's license [2] and registration card.[3] The defendant had neither of the requested items nor did he have a certificate of insurance.[4] David Perry told the deputy his name, but according to the deputy, he had no identification. The deputy checked with headquarters to determine if the car had been stolen and was advised that the registered owner was David D. Perry.

The deputy then advised Mr. Perry that he was charged with operating a vehicle without a driver's license and would be taken to a magistrate. He also informed the defendant that his vehicle would be towed. When the deputy called the sheriff's office to ask for another deputy to assist him in having the car towed, a Sergeant Bowman was dispatched.

Deputy Wall testified that he had a brief conversation with the passenger, who identified himself as the driver's brother or some other relative. According to Deputy Wall, his recollection of this conversation was vague. Although he thought that the passenger had been drinking, he did not believe him to be incapacitated.

The car had been pulled off the traveled portion of the highway and onto the berm adjacent to a discount store. This area was used for parking by customers of the store. Deputy Wall explained it is departmental policy that when a person is arrested for a traffic violation, his vehicle is towed. He indicated that he had never asked the driver or his brother whether they could make arrangements for the disposition of the car. It was the deputy's position that absent

---

**2.** W.Va.Code, 17B–2–9, provides:

"Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand of a justice of the peace, a peace officer, or a field deputy or inspector of the department. However, no person charged with violating this section shall be convicted if he produces in court or the office of the arresting officer an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest."

**3.** W.Va.Code, 17A–3–13, provides:

"Every owner upon receipt of a registration card shall write his signature thereon with pen and ink in the space provided. Every such registration card shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving or in control of such vehicle who shall display the same upon demand of a police officer or any officer or employee of the department."

Under W.Va.Code, 17A–11–1, "[i]t is a misdemeanor for any person to violate any of the provisions of this chapter unless such violation is by this chapter or other law of this State declared to be a felony."

**4.** W.Va.Code, 17D–2A–4(b), provides:

"The certificate provided pursuant to the provisions of this section or other proof of insurance shall be carried by the insured in the appropriate vehicle for use as proof of security, and must be presented at the time of vehicle inspection as required by article sixteen [§ 17C–16–1 et seq.], chapter seventeen-C of this Code: Provided, that an insured shall not be guilty of a violation of this subsection (b) if he furnishes proof that such insurance was in effect within seven days of being cited for not carrying such certificate or other proof in such vehicle. As used in this section, proof of insurance means a certificate of insurance, an insurance policy, a mechanically reproduced copy of an insurance policy or a certificate of self-insurance."

Under W.Va.Code, 17D–2A–9, a violation of "any provision of this article . . . is . . . a misdemeanor."

some identification by the driver, David Perry, he could not be sure that he was the owner of the vehicle. He, therefore, believed it was necessary to impound the vehicle.

When Sergeant Bowman arrived, Deputy Wall had a rather brief conversation with him about filling out the inventory form. Deputy Wall then took the defendant to the magistrate's office. He further testified that it is customary to inventory the contents of a vehicle when it is towed in and that when he looked in the car he had seen a black briefcase on the back seat.

Sergeant Bowman, who conducted the actual inventory search, stated that there was a briefcase on the back seat. There was nothing else of value in the interior of the car. At one point, the defendant's brother had attempted to remove the car keys which were in the ignition switch, but had been advised not to do so. After completing the interior inventory, Sergeant Bowman took the car keys and unlocked the trunk where he found a bag of men's clothing and another bag which was folded at the top. Upon unfolding this bag, he saw several plastic baggies which he suspected contained marijuana. About this time, a State Police officer arrived on the scene. He also viewed the contents of the bag and concluded that it contained marijuana. Subsequent tests showed there were 2.8 ounces of marijuana in the bag.

In *State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980), we discussed at some length the prerequisites of an inventory search. We stated that the opinion in *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976), was somewhat ambiguous as to the prerequisites for a valid inventory search. We, therefore, settled the matter, as had other state courts, under our State Constitution and prescribed these conditions for a lawful inventory search:

"(1) [T]here was an initial lawful impoundment of the vehicle; (2) the driver was not present at the time of the impoundment to make other arrangements for the safekeeping of his belongings; (3) the inventory itself was prompted by a number of valuables in plain view inside the car; and (4) there was no suggestion that the inventory search was a pretext for conducting an investigative search." 166 W.Va. at 50, 272 S.E.2d at 460. (Footnotes omitted).[5]

In *Goff*, police officers were investigating a possible breaking and entering at a used car lot office. The defendant, who was observed sitting in a pickup truck parked on the lot, was arrested and taken to the police station. About an hour later, the police returned to the lot and, without a search warrant, made what they later described as an inventory search of the truck. In the glove compartment, they found the title to a 1969 Ford automobile belonging to one of the cars on the lot. This was introduced at trial over the defendant's objection.

■ We pointed out in *Goff* that the basis for a valid inventory search "does not arise because the police suspect the vehicle contains contraband or the evidence of a crime," the traditional basis for the warrantless search of motor vehicles. 166 W.Va. at 48–49, 272 S.E.2d at 459. *See State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980). *See also United States v. Ross*, 456 U.S. 798, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982). Instead, the basis for an inventory

---

**5.** This statement was made in *Goff*, 166 W.Va. at 49–50, 272 S.E.2d at 460:

"While it may be argued that these conditions are not an integral part of the *Opperman* holding, we consider them to be. Even if they are not required by the Fourth Amendment, they comport with our view of the prerequisites of an inventory search under Article III, Section 6 of the West Virginia Constitution. In a number of jurisdictions since *Opperman*, courts have had difficulty in determining whether the foregoing conditions are predicates for a valid inventory search and have

either concluded that they are, or have resolved the issue by setting standards under their own constitutional provisions as permitted by *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). *See e.g. Altman v. State*, 335 So.2d 626 (Fla.App.1976); *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky. 1979); *State v. Rome*, 354 So.2d 504 (La. 1978); *State v. Goodrich*, 256 N.W.2d 506 (Minn.1977); *State v. Sawyer*, 174 Mont. 512, 571 P.2d 1131 (1977); *State v. Slockbower*, 79 N.J. 1, 397 A.2d 1050 (1979); *Drinkard v. State*, 584 S.W.2d 650 (Tenn.1979)." (Footnote omitted).

search rests on several practical considerations which we identified in *Goff* as, first, the protection of the owner's personal property located in the vehicle while it is impounded by the police. A related consideration is the protection of the police against claims that the property was lost or stolen. A final point is the protection of the police from any danger that might arise from material contained in the vehicle.[6]

We rejected the inventory search in *Goff* because there was no impoundment since the car had been left on the used car lot, and there was no showing that there had been any items of personal property in plain view that would warrant an inventory search.

■ The validity of an inventory search depends on whether the police have proper grounds to impound a car. As we stated in Syllabus Point 1 of *Goff:*

> "The right to an inventory search begins at the point where the police have a lawful right to impound the vehicle."

In note 6 of *Goff,* 166 W.Va. at 51–52, 272 S.E.2d at 461, we quoted from *State v. Singleton,* 9 Wash.App. 327, 332–33, 511 P.2d 1396, 1399–1400 (1973), which is frequently cited for its list of grounds for impoundment:

> "Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to

ordinance or statute which provides therefor as in the case of forfeiture."

■ In many of these situations when impoundment of a vehicle is permissible, ordinarily, there is no necessity to contact the owner or possessor of the vehicle because he is unavailable or the vehicle is stolen or has been used in the commission of a crime. This is self-evident from a consideration of the enumerated grounds in *Singleton.* In (1), where the car is unattended and illegally obstructing traffic, or (2), where there has been an accident and the driver is incapable of dealing with the vehicle, or (4), where the car is abandoned, the owner or possessor of the vehicle is either not physically available for consultation or, if available, is physically or mentally unable to consult. Likewise, in (3), where the car has been stolen, it would be absurd to consult with the thief as to the disposal of the car. Furthermore, as to the other ground in (3), where the car is used in the commission of a crime and its retention as evidence is necessary, there would be no reason to talk with the owner about other alternatives. Finally, as to ground (6), where an ordinance or statute provides for impoundment as in the case of a forfeiture, there is an absolute right to impound.[7]

■ The right of impoundment may also arise where the owner or possessor of the vehicle is arrested in or near his car and it would be hazardous to the vehicle or its contents to leave them unattended. *Cabbler v. Superintendent,* 528 F.2d 1142 (4th Cir.1975), *cert. denied,* 429 U.S. 817, 50 L.Ed.2d 77, 97 S.Ct. 60 (1976). *See, e.g., United States v. Balanow,* 528 F.2d 923 (7th Cir.1976); *United States v. Ducker,* 491 F.2d 1190 (5th Cir.1974); *Mattson v. State,* 328 So.2d 246 (Fla.App.1976); *State v. Wallen,* 185 Neb. 44, 173 N.W.2d 372, *cert. denied,* 399 U.S. 912, 26 L.Ed.2d 568, 90 S.Ct. 2211 (1970); *People v. Brnja,* 50 N.Y.2d 366, 429 N.Y.S.2d 173, 406 N.E.2d 1066 (1980); *King v. State,* 562 P.2d 902 (Okla.Crim.App.1977); *State v. Patterson,*

---

**6.** These points were set out in *Opperman,* 428 U.S. at 369, 49 L.Ed.2d at 1005, 96 S.Ct. at 3097.

**7.** As for the fifth ground for impoundment mentioned in *Singleton,* it is apparent that where a

car is so mechanically defective as to be a menace to those using the highway, it will have to be towed, although the owner normally should be permitted to make the towing arrangements.

8 Wash.App. 177, 504 P.2d 1197 (1973); 2 W. LaFave, *Search and Seizure* § 7.3 at 554 (1978); Annot., 48 A.L.R.3d 537 (1973).

■ Courts have held that a driver must be given a reasonable opportunity to make some alternative disposition of the vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage.[8] *See, e.g., People v. Nagel,* 17 Cal.App.3d 492, 497, 95 Cal.Rptr. 129, 132 (1971); *Virgil v. Superior Ct.,* 268 Cal.App.2d 127, 132–33, 73 Cal. Rptr. 793, 796–97 (1968); *Arrington v. United States,* 382 A.2d 14, 18 (D.C.1978); *Miller v. State,* 403 So.2d 1307 (Fla.1981); *Strobhert v. State,* 165 Ga.App. 515, 516, 301 S.E.2d 681, 682 (1983); *People v. Velleff,* 94 Ill.App.3d 820, 823–24, 50 Ill.Dec. 222, 419 N.E.2d 89, 92 (1981); *State v. Kuster,* 353 N.W.2d 428, 432 (Iowa 1984); *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975); *Wagner v. Commonwealth,* 581 S.W.2d 352, 356 (Ky.1979), *overruled on other grounds, Estep v. Commonwealth,* 663 S.W.2d 213, 216 (Ky.1983); *State v. Rome,* 354 So.2d 504 (La.1978); *State v. Goodrich,* 256 N.W.2d 506, 507, 509, 511 (Minn.1977); *State v. Slockbower,* 79 N.J. 1, 9–12, 397 A.2d 1050, 1053–55 (1979); *Drinkard v. State,* 584 S.W.2d 650, 653 (Tenn.1979); *Pearson v. State,* 649 S.W.2d 786, 790 (Tex.Civ.App.1983); *Smyth v. State,* 634 S.W.2d 721, 723 (Tex.Crim.App. 1982) (en banc); *State v. Houser,* 95 Wash.2d 143, 153, 622 P.2d 1218, 1225 (1980) (en banc).

■ We agree with this principle, although as we have previously stated, the duty to consult with a driver concerning the disposition of his vehicle does not exist in every impoundment situation. There is no need to confer with the owner or possessor of a car prior to impoundment concerning the disposition of his vehicle and its

contents where he is unavailable or physically or mentally incapable of making arrangements for its protection or the vehicle has been stolen or has been used in the commission of a crime and its retention as evidence is necessary. However, in the situation where the owner or possessor of a vehicle has been arrested in or near his car, ordinarily, he must be given a reasonable opportunity to make some alternative disposition of the vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage.

■ Although the State suggests that the officer could impound without consultation in this case because he believed the car had been stolen, we do not agree that his belief was justified. The lack of a driver's license or other identification, while suspicious, does not rise to probable cause in light of all the circumstances. The license plate number matched the name which was given by the defendant to the officer when he was first stopped. The defendant's brother was a passenger who identified his relationship, but apparently was not asked for any identification. The car had not been reported as stolen. Furthermore, the arresting officer testified as to what we believe was the true reason for impoundment: it is departmental policy to impound the car when a driver is arrested for a traffic violation.[9]

Two cases from the Supreme Court of Washington discuss the sufficiency of probable cause facts to warrant impoundment where the claim is made that the car was stolen. In *State v. Houser,* 95 Wash.2d 143, 622 P.2d 1218 (1980), the defendant was stopped for making an improper turn. When asked for a driver's license, he did not have one, but produced an employee permit in the name of Anthony Kimber, together with a temporary registration in

---

**8.** Even in this situation, the right to an alternative disposition may be controlled by the facts of the particular case. Where the defendant resists arrest, the officer may deny the opportunity for him to make alternative arrangements. *State v. White,* 387 A.2d 230, 232–33 (Me.1978).

**9.** Although not raised in this case, we believe that impoundment is, ordinarily, not justified

for minor motor vehicle violations which would ordinarily be handled by a citation under W.Va. Code, 17C–19–3, or where it would appear reasonable to have the driver follow the officer in his car to a magistrate office. *See State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975); Annot., 48 A.L.R.3d 537, 558 and 566 (1973).

the same name. This was checked out over the police radio and the defendant did not match the description. Near the front seat, the officer found an insurance claim bearing the name of Lynn Houser. As a result of checking this name, the police obtained a description matching the defendant's and further information revealing that Houser's driver's license had been suspended. The car had out-of-state plates (Oregon), but had not been reported as stolen. The court found insufficient evidence to constitute probable cause.

In *State v. Simpson*, 95 Wash.2d 170, 622 P.2d 1199 (1980), the defendant had a missing front license plate on his vehicle. The back license plate had been cancelled and his driver's license had been suspended. These facts were held insufficient to warrant a subsequent inventory search. *Cf. Gonzales v. State*, 507 P.2d 1277 (Okla. Crim.App.1973) (mere suspicion that bottle found in car contained narcotics did not justify an inventory search).

 In this case, we find that the arresting officer did not have a ground for impoundment that would enable him to avoid giving the driver a reasonable opportunity to make an alternative disposition. The failure to permit such alternative disposition renders the impoundment and subsequent inventory search invalid. We specifically base this requirement, as we did in *Goff*, on Section 6 of Article III of the West Virginia Constitution.[10]

Because we reverse this case on the failure to accord the owner the right to make reasonable alternative arrangements, we decline to address the second issue of whether police officials may search the locked trunk of a vehicle as part of an inventory search.[11]

For the foregoing reasons, the judgment of the circuit court is reversed and the case

is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

---

10. Section 6 of Article III of the West Virginia Constitution provides:
    "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

11. The State argues that an inventory search of a locked automobile trunk is permissible under *Illinois v. LaFayette*, 462 U.S. 640, 77 L.Ed.2d 65, 103 S.Ct. 2605 (1983).