14-0174 — *State v. Noel*

**FILED**
**November 6, 2015**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Benjamin, Justice, concurring:

I concur with the majority opinion. I write separately to address any contention that the illegal narcotics sought to be suppressed would have inevitably been discovered during the police's inventory search of the subject vehicle even had Officer Adams scrupulously complied with *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), by not conducting a search of the passenger compartment incident to Mr. Noel's arrest. The majority opinion properly concludes that the State failed to carry its burden to prove that the police conducted a valid inventory search of the vehicle that would have excused them from first obtaining a warrant. In so doing, the majority dispels any notion that inventory searches should routinely afford a governmental agency a license to nullify the protections against unreasonable searches and seizures provided by the Fourth Amendment and by Section 6 of Article III of the West Virginia Constitution. In other words, an inventory search may not be used simply as a mechanism of convenience by the State to avoid the warrant requirement of our federal and state constitutions.

The seminal case by this Court addressing the issue of an inventory search of an automobile is *State v. Goff*, 166 W. Va. 47, 272 S.E.2d 457 (1980). In *Goff,* the defendant was arrested for breaking and entering into a used car dealership after his

1

accomplice was discovered on the accompanying lot driving one of the dealership's automobiles. The defendant himself was found seated in a pickup truck parked elsewhere on the lot, and both men were transported to jail. Thereafter, the police conducted an inventory search of the pickup, whereupon they discovered the title to the dealership's automobile in the truck's glove compartment. The title was admitted into evidence at the defendant's trial. On appeal of his conviction, the defendant asserted, *inter alia*, that the inventory search was illegal, requiring suppression of the title. The issue presented was one of first impression for this Court. To resolve it, we looked to the decision of the United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

In *Goff*, we noted at the outset the *Opperman* Court's acknowledgment that, under the proper circumstances, a warrantless inventory search of a vehicle could be made. The decision in *Opperman* justified an inventory search on the grounds of (1) protecting the owner's property while it remains in police custody; (2) protecting the police against claims of property being stolen; and (3) protecting the police from potential danger. *Opperman* also made clear that an inventory search is not a license for government officials to avoid the requirements of the Fourth Amendment respecting lawful searches and seizures. *Goff* recited from *Opperman* the following limitations to the inventory search:

> The inventory was conducted only after the car had been impounded for multiple parking violations. The owner,

2

having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. . . . [T]here is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

*Goff*, 166 W. Va. at 55 n.3, 272 S.E.2d at 463 n.3 (quoting *Opperman*, 428 U.S. at 375-76, 96 S. Ct. at 3100, 49 L. Ed. 2d at 1009).

As a result of the limitations imposed by *Opperman*, we adopted the following guidelines for conducting an inventory search in West Virginia in syllabus points 1 and 2 of *Goff*:

> 1. The right to an inventory search begins at the point where the police have a lawful right to impound the vehicle.
>
> 2. An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.

We applied these guidelines in *Goff* and concluded that the inventory search in that case was unlawful:

> Even if we were to assume that there had been an actual lawful impoundment of the truck, the inventory search would not be proper in this case because there was no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.
>
> * * *
>
> The basis for this rule is that unless some personal property is seen in plain view in the vehicle there is little, if any, basis for

3

> an inventory search. The purpose for a routine police inventory search is to secure personal property from being stolen or lost while the car is in custody, but without any visible personal property there is a diminished likelihood that the car will be broken into. On the other hand, it must be remembered that once the vehicle has been impounded the police have the right to secure it by rolling up the windows and locking the doors. Any personal property seen in the course of this action can lead to a fuller inventory search.

*Goff*, 166 W. Va. at 51-53, 272 S.E.2d at 461-62.

We relied on *Goff* to reverse a conviction in *State v. Perry*, 174 W. Va. 212, 324 S.E.2d 354 (1984). The defendant in *Perry* was arrested for driving without a license, and his vehicle was impounded. During the subsequent inventory search, the police found a bag of marijuana in the trunk of the vehicle. The State sought and successfully obtained the vehicle's forfeiture on the ground that it had been used to facilitate a crime. On appeal, the defendant maintained, *inter alia*, that the inventory search was unlawful because the police did not give him the option of having someone retrieve the car, rather than impounding it. We concurred in the defendant's position:

> Courts have held that a driver must be given a reasonable opportunity to make some alternative disposition of the vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage. . . . We agree with this principle, although as we have previously stated, the duty to consult with a driver concerning the disposition of his vehicle does not exist in every impoundment situation. . . . However, in the situation where the owner or possessor of a vehicle has been arrested in or near his car, ordinarily, he must be given a reasonable opportunity to make some alternative disposition of the

4

> vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage.
>
> * * *
>
> In this case, we find that the arresting officer did not have a ground for impoundment that would enable him to avoid giving the driver a reasonable opportunity to make an alternative disposition. The failure to permit such alternative disposition renders the impoundment and subsequent inventory search invalid. We specifically base this requirement, as we did in *Goff*, on Section 6 of Article III of the West Virginia Constitution.

*Perry*, 174 W. Va. at 217-18, 324 S.E.2d at 359-60.

To reiterate, our decision in *Perry* requires that the arrested driver ordinarily be given a reasonable opportunity to arrange to have the vehicle removed by means other than police impoundment. If the vehicle is nonetheless impounded, then *Goff* authorizes an inventory search of a vehicle only when items of personal property are in plain view within. Moreover, controlling precedent strongly suggests that inventory searches so authorized be conducted pursuant to established procedures. In *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the Supreme Court of the United States concurred with *Opperman*'s assessment of the reasonableness of warrantless inventory searches based on "caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Bertine*, 479 U.S. at 372, 107 S. Ct. at 741, 93 L. Ed. 3d at 746.

5

Indeed, in *Opperman*, the Court discussed with approval its prior decision in *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), distilling therefrom that protective inventory searches should be "carried out in accordance with *standard procedures* in the local police department, a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function." *Opperman*, 428 U.S. at 375, 96 S. Ct. at 3100, 49 L. Ed. 2d at 1008 (emphasis in original). The requirement was met in *Opperman* by virtue of the searching officers having followed "standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts." *Opperman*, 428 U.S. at 376, 96 S. Ct. at 3100, 49 L. Ed. 2d at 1008.

That vehicles are routinely impounded and searched, regardless of circumstances, does not equate to the implementation and observance of routine, standardized procedures in the conduct of such searches. We made that clear in *State v. York*, 203 W. Va. 103, 506 S.E.2d 358 (1998), in which we reversed the circuit court's failure to suppress the evidence seized during an inventory search, where the chief of the police department testified that "inventory searches were routinely conducted of impounded vehicles" and that he would have conducted the particular search at issue regardless of whether he had seen any personal property in plain view inside the subject vehicle. *See id.*, 203 W. Va. at 106, 109, 506 S.E.2d at 361, 364.

On a motion to suppress, "[w]hen the State seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *State v. Lacy*, 196 W. Va. 104, 111, 468 S.E.2d 719, 726 (1996). In the case at bar, the State put forth no evidence that the police legitimately saw any item of value in the vehicle driven by Mr. Noel, no evidence that he was asked whether he wanted to make arrangements to have the vehicle removed, and no evidence that the impoundment and inventory search were conducted pursuant to any standards or procedures adopted by the Bluefield Police Department or the City of Bluefield.

Indeed, the only authority I could find potentially governing the situation was a City ordinance permitting the impoundment of vehicles that have been wrecked, abandoned, illegally parked, or otherwise found to be in violation of legal requirements, in which case the impounding officer "is authorized to do every act, including entry into such vehicle, which may be reasonably necessary to effect such impounding." Bluefield, W. Va., Code of Ordinances § 40-13 (1974). The ordinance does not address impoundment of a vehicle associated with a moving traffic violation, and it provides no standards or procedures to assist a police officer who might conduct an inventory search pursuant to such an impoundment. Officer Adams' testimony at the suppression hearing that his department's police officers, presumably as a matter of routine, simply "do

7

inventories on cars that we tow" underscores the lack of standards or procedures necessary for consideration of an exception to the warrant requirement herein.

Any alternative disposition of this appeal is therefore controlled in substantial part by our decision in *York* disapproving of routine inventory searches, and in the remainder by our decisions in *Goff* and *Perry* requiring, respectively, that such searches, when appropriate, be triggered by the need to secure observable personal property and that arrested drivers be reasonably given an alternative to impoundment for disposing of their vehicles. In the final measure, this court is obliged to respect and give effect to the limitations on government actions contained within our federal and state constitutions, and to ensure that inventory searches not simply be "a ruse for a general rummaging in order to discover incriminating evidence." *Whren v. United States*, 517 U.S. 806, 811, 116 S. Ct. 1769, 1773, 135 L. Ed. 2d 89 (1996).