779 S.E.2d 877

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**James Earl NOEL, Jr., Defendant Below, Petitioner.**

No. 14–0174.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2015.

Decided Nov. 6, 2015.

David L. White, Charleston, WV, for Petitioner.

Patrick Morrisey, Attorney General, Elbert Lin, Solicitor General, Gilbert Dickey, Assistant Attorney General, Julie A. Warren, Assistant Attorney General, Charleston, WV, for Respondent.

DAVIS, Justice:

The petitioner herein and defendant below, James Earl Noel, Jr. ("Mr. Noel"), appeals from a sentencing order entered January 30, 2014, by the Circuit Court of Mercer County. By that order, as corrected by its March 18, 2014, amended sentencing order,[1] the circuit court upheld Mr. Noel's jury convictions and sentenced him therefor as follows: one to five years for his conviction of fleeing in a vehicle;[2] one to fifteen years for his conviction of possession with intent to deliver a schedule II controlled substance (cocaine);[3] and one to five years for his conviction of possession with intent to deliver a schedule II controlled substance (methamphetamine),[4] said sentences to run consecutively. On appeal to this Court, Mr. Noel raises two assignments of error: (1) the circuit court erred by not suppressing evidence discovered by the arresting officer at the time of the subject traffic stop and (2) the circuit court erred by allowing Mr. Noel's attorney to answer as to whether Mr. Noel intended to testify at his trial in violation of *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988).[5] Upon a review of the parties' arguments, the record designated for appellate

consideration, and the pertinent authorities, we conclude that the search of Mr. Noel's car was unlawful and that the circuit court erred by not suppressing the evidence found during that search. Accordingly, we reverse Mr. Noel's convictions and resultant sentences and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On August 23, 2013, Mr. Noel was driving through the streets of downtown Bluefield, West Virginia, when Bluefield Police Officer K.L. Adams ("Officer Adams"), who was patrolling those streets in a police car, pulled out behind him. Mr. Noel then turned onto a side street, and Officer Adams continued his patrol route. Shortly thereafter, Mr. Noel exited a side street in front of Officer Adams' cruiser, whereupon Officer Adams noticed that Mr. Noel's vehicle had a large, horizontal crack in the windshield, which spanned from one side of the windshield to the other and had additional cracks radiating vertically from the main crack. Believing the windshield cracks posed a safety hazard, Officer Adams activated his cruiser's lights to effectuate a stop of Mr. Noel's vehicle.[6] Rather than stopping his vehicle, however, Mr. Noel drove away at a high rate of speed, reaching speeds of eighty to ninety miles per hour, through residential and campus streets of Bluefield. Upon reaching a particular residence, Mr. Noel stopped his vehicle in front of the house, exited his vehicle, and attempted to flee on foot; shortly thereafter, Officer Adams apprehended him.

---

1. On March 18, 2014, the circuit court entered an amended sentencing order which corrected the erroneous sentences set forth in its January 30, 2014, sentencing order to accurately reflect the sentences imposed during the court's January 16, 2014, sentencing hearing.

2. *See* W. Va.Code § 61-5-17(f) (2012) (Supp. 2013). For further treatment of this provision, see Section III.A., *infra.*

3. *See* W. Va.Code § 60A-4-401 (2011) (Repl. Vol. 2014).

4. *Id.*

5. The parties also have submitted supplemental briefs in this case regarding the recent United States Supreme Court case of *Heien v. North Carolina,* — U.S. —, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). Because the arresting officer neither charged nor arrested Mr. Noel with a violation of a vehicle safety statute, we do not find this case to be instructive to our resolution of the instant appeal. *See infra* Section III.

6. *See* W. Va.Code § 17C-16-2(a) (1951) (Repl. Vol. 2013). For the relevant statutory language, see *infra* Section III.A.

Upon returning Mr. Noel to the location where Mr. Noel's vehicle and Officer Adams' police cruiser were parked, Officer Adams asked Mr. Noel for his driver's license; Mr. Noel stated that he. did not have a driver's license, but produced an identification card issued by the State of Ohio. Investigating further, Officer Adams learned that Mr. Noel's driver's license had been suspended due to numerous violations. Mr. Noel additionally claimed that he had traveled to that particular house to visit its resident, but the woman living there said that, while she knew who Mr. Noel was, she did not know why he would be visiting her. While Officer Adams engaged in this conversation with the home's occupant, Mr. Noel again attempted to flee on foot.

Eventually, Officer Adams placed Mr. Noel in handcuffs. At this point in time, Mr. Noel was standing next to the driver's side door of his vehicle, and the driver's side door was open. Officer Adams later testified that Mr. Noel repeatedly glanced inside his vehicle and at the vehicle's center console. Apparently fearing that Mr. Noel either might have a weapon on his person or in his vehicle that he was attempting to access, Officer Adams searched under the vehicle's driver's seat and in the vehicle's center console, where he discovered crack cocaine and methamphetamine. At trial, Officer Adams explained that Mr. Noel's lack of a valid driver's license and his repeated attempts to flee, coupled with his knowledge that persons in custody have been known to escape police handcuffs and retrieve a weapon, led him to search the vehicle. After placing Mr. Noel under arrest for fleeing but before transporting him to the police station for processing, Officer Adams conducted an inventory of Mr. Noel's car in preparation for its impoundment; during the inventory process, Officer Adams also discovered straws used to crush and inhale drugs and latex gloves. On the way to the police station, Mr. Noel allegedly asked Officer Adams, "Who ratted me out? How did you know to pull me over?" The State did not reveal this dialogue to Mr. Noel or his attorney until right before his criminal trial was scheduled to begin. As a result of this delayed disclosure, the trial court prohibited the State from using this statement in its case-in-chief, but allowed it to be used for purposes of impeachment on cross-examination.

Mr. Noel was indicted by a Mercer County grand jury on charges of fleeing in a vehicle, possession with intent to deliver a schedule II controlled substance (cocaine), and possession with intent to deliver a schedule II controlled substance (methamphetamine). Prior to trial, Mr. Noel moved to suppress the evidence Officer Adams discovered upon searching his vehicle, arguing that no probable cause existed for either the traffic stop or the subsequent vehicle search. The trial court denied Mr. Noel's motion and allowed the drug evidence to be admitted at trial. At the commencement of his jury trial on December 26, 2013, the trial court informed Mr. Noel of his right to testify and his right to remain silent, and that the jury would be instructed accordingly; Mr. Noel answered in the affirmative when the trial court asked if he had understood this explanation of his rights. Thereafter, at the beginning of Mr. Noel's case-in-chief, the trial court asked whether Mr. Noel intended to testify, to which his attorney replied in the negative. Upon the conclusion of the trial, the jury convicted Mr. Noel of fleeing in a vehicle and possession with the intent to distribute cocaine and methamphetamine. During the ensuing sentencing hearing, the trial court sentenced Mr. Noel to one to five years for his conviction of fleeing in a vehicle, one to fifteen years for his conviction of possession with intent to deliver a schedule II controlled substance (cocaine), and one to five years for his conviction of possession with intent to deliver a schedule II controlled substance (methamphetamine), which sentences were memorialized by the court's January 30, 2014, sentencing order and its March 18, 2014, amended sentencing order.[7] From these convictions and corresponding sentences, Mr. Noel appeals to this Court.

## II.

### STANDARD OF REVIEW

In the case *sub judice*, Mr. Noel asserts two alleged errors. Because this Court's

---

**7.** *See supra* note 1.

review of each of these issues is governed by a different standard, we will set forth the applicable standard of review in our discussion of each issue.

## III.

## DISCUSSION

On appeal to this Court, Mr. Noel raises two assignments of error: (1) the circuit court erred by refusing to suppress the evidence that Officer Adams obtained from his search of Mr. Noel's car and (2) the circuit court violated Mr. Noel's rights under *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988), by allowing Mr. Noel's attorney to answer whether Mr. Noel intended to testify in his own defense at trial. We will address each of these assigned errors in turn.

### A. Motion to Suppress Search Evidence

Mr. Noel first argues that the circuit court erred by denying his motion to suppress evidence discovered during Officer Adams' search of Mr. Noel's vehicle. After Officer Adams handcuffed Mr. Noel, who was standing at the open, driver's side door of his car, Officer Adams searched the interior of the vehicle because, he explained, he was afraid Mr. Noel had a weapon that he would be able to retrieve. During this search, Officer Adams discovered evidence that led to Mr. Noel's arrest and conviction for the two drug charges in the case *sub judice*. Mr. Noel contends that the search and resultant evidence was improper because Officer Adams did not have probable cause to effectuate a traffic stop of his vehicle.

The State responds that the West Virginia vehicle safety statutes provided Officer Adams with sufficient probable cause to stop Mr. Noel's vehicle to inspect its cracked windshield, and, after Mr. Noel fled upon the activation of Officer Adams' patrol car lights, additional probable cause existed to stop Mr. Noel for fleeing. The State further contends that Officer Adams conducted a permissible search of Mr. Noel's vehicle incident to a valid traffic stop, and, therefore, the circuit

court correctly refused to suppress the evidence discovered during this search.

Before reaching the merits of this assignment of error, we first must consider the manner in which we review the denial of a motion to suppress. We previously have enunciated this standard as follows:

The standard of review of a circuit court's ruling on a motion to suppress is now well defined in this State. *See State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994) (discussing at length the standard of review in a suppression determination). By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428[, 433], 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995) (footnotes omitted).

Turning to Mr. Noel's contentions, we disagree that Officer Adams did not have sufficient cause[8] to effectuate a traffic stop as a result of the severely broken windshield in Mr. Noel's vehicle. Pursuant to W. Va. Code § 17C–16–2(a) (1951) (Repl. Vol. 2013),

[t]he department of public safety may at any time upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require

8. We note that both Mr. Noel and the State have indicated that Officer Adams was required to have *probable* cause in order to stop Mr. Noel's vehicle. This, however, is not the correct standard. Rather, the governing vehicle safety statute requires only "reasonable cause," W. Va.Code

§ 17C–16–2(a), and our established case law requires only "an articulable reasonable suspicion," Syl. pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), to stop a vehicle.

the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate.

Insofar as a vehicle cannot be driven "in such unsafe condition as to endanger any person," W. Va.Code § 17C–15–1(a) (1951) (Repl. Vol. 2013), it is clear that Officer Adams had "reasonable cause," W. Va.Code § 17C–16–2(a), to stop Mr. Noel's vehicle to inspect its windshield to determine whether such impairment was of a nature as to obstruct the driver's vision and render the vehicle unsafe.

■■■ However, an independent justification also exists to provide a basis for the traffic stop. Upon his activation of his patrol car's lights, Officer Adams observed Mr. Noel drive away from him, through the streets and college campus of downtown Bluefield, reaching speeds of eighty to ninety miles per hour. Such actions on Mr. Noel's part constituted the crime of fleeing with reckless indifference and provided independent justification for the subject traffic stop. See State v. Flint, 171 W.Va. 676, 681, 301 S.E.2d 765, 770 (1983) (observing that there exists "a legitimate state interest in ... the safety of the public [so as to] necessitate ... the stopping of the erratically driven vehicle"). We previously have held that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. pt. 1, in part, State v. Stuart, 192 W.Va. 428, 452 S.E.2d 886 (1994). Specifically, the crime of fleeing involving reckless indifference, with which Mr. Noel was charged and ultimately convicted, is defined as follows:

A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer ... acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony and, upon conviction

thereof, shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned in a state correctional facility not less than one nor more than five years.

W. Va.Code § 61–5–17(f) (2012) (Supp.2013).[9] Having determined that sufficient cause existed to effectuate the traffic stop, we next must determine whether the ensuing search was permissible.

■■■ Whether Officer Adams' search of Mr. Noel's vehicle was proper depends upon the facts and circumstances surrounding the traffic stop, itself. As the United States Supreme Court explained in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983),

[o]ur past cases indicate ... that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See *Terry* [*v. Ohio* ], 392 U.S. 1[, at 21, 88 S.Ct. 1868], at 1880[, 20 L.Ed.2d 889 (1968) ]. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should ... discover contraband other than

---

9. In the case *sub judice,* we will apply the version of W. Va.Code § 61–5–17(f) (2012) (Supp.2013) that was in effect at the time Mr. Noel committed the offense of fleeing in 2013. While this statute twice has been amended since that date, those changes do not alter the definition of or the penalty for fleeing with reckless indifference set forth in subsection (f). *See* W. Va.Code § 61–5–17(f) (2015) (Supp.2015); W. Va.Code § 61–5–17(f) (2014) (Repl. Vol. 2014).

weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

463 U.S. at 1049–50, 103 S.Ct. at 3480–81, 77 L.Ed.2d 1201 (footnote and additional citations omitted).

More recently, the Court revisited the question of when a vehicle search incident to a driver's arrest is proper and reasonable under the circumstances in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant,* the Tucson Police Department was investigating a residence believed to be involved in the sale of drugs; Mr. Gant answered the door and informed the officers that the home's owner would be home later that evening. Following this encounter, the police conducted a records check and learned that Mr. Gant's driver's license had been suspended and that he had an outstanding warrant for his arrest for driving on a suspended license. Upon returning to the residence later that evening to continue their drug investigation, the officers saw Mr. Gant also returning to the residence while driving a car. Once Mr. Gant parked his car, the police called his name and immediately arrested and handcuffed him. After placing Mr. Gant in the back of a patrol car, the officers searched his car, where they found a gun and a bag of cocaine. During his ensuing criminal trial for possession of a narcotic drug for sale and possession of drug paraphernalia, Mr. Gant moved to suppress the evidence discovered in his car claiming that the search of his vehicle was unlawful. The trial court permitted the evidence to be admitted, but the Arizona Supreme Court determined the search to be unreasonable. *Id.,* 556 U.S. at 335–38, 129 S.Ct. at 1714–16, 173 L.Ed.2d 485.

■ In considering the parties' arguments, the Court recognized the existence of confusion regarding the scope of the exception to the Fourth Amendment's search warrant requirement in cases involving a vehicle search incident to an arrest. Thus, the United States Supreme Court revisited the issue, clarifying the parameters of such a search by holding as follows:

> [P]olice [are authorized] to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.... [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."

*Id.,* 556 U.S. at 343, 129 S.Ct. at 1719, 173 L.Ed.2d 485 (footnote omitted) (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 2137, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring)). With respect to the first reason for authorizing such a search, *i.e.,* an arrestee who is unsecured and within reaching distance of the vehicle's passenger compartment, the Court observed that

> [b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains. But in such a case a search incident to arrest is reasonable under the Fourth Amendment.

*Gant,* 556 U.S. at 343 n. 4, 129 S.Ct. at 1719 n. 4, 173 L.Ed.2d 485 (citation omitted). As to the second justification for such a search, *i.e.,* to retrieve evidence relevant to the crime for which the arrestee has been arrested, the Court noted that,

> [i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, ..., the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Gant,* 556 U.S. at 343–44, 129 S.Ct. at 1719, 173 L.Ed.2d 485 (citations omitted). Thus, the precedent established by *Gant* is clear, and we now hold that, pursuant to *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), police may conduct a warrantless search of a vehicle incident to a recent occupant's arrest only if (1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest. If these justifica-

tions are absent, a warrantless search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

 Similarly, this Court considers the circumstances justifying a search of a vehicle incident to a traffic stop to be quite narrow:

"An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, *probable cause may arise* to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, *and, at this point, if exigent circumstances are present,* a warrantless search may be made." Syllabus point 4, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980)[ (emphasis added), *overruled on other grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991) ].

Syl. pt. 2, *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (emphasis added). Furthermore,

"[a] furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence." Syllabus point 5, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980)[, *overruled on other*

*grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991).].

Syl. pt. 3, *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765.

Applying these holdings to the case *sub judice,* we conclude that Officer Adams' search of Mr. Noel's car without a warrant was not lawful under either the Supreme Court's opinion in *Gant* or this Court's prior jurisprudence. To render the subject search lawful under *Gant,* either (1) Mr. Noel had to be unsecured and within reaching distance of the passenger compartment of his car or (2) it was reasonable to believe that Mr. Noel's vehicle contained evidence of the crime for which he was arrested, *i.e.,* fleeing with reckless indifference. From the circumstances that led to the instant appeal, it is clear that Mr. Noel was neither unsecured nor within reaching distance of the interior of his vehicle searched by Officer Adams. The record demonstrates that Officer Adams secured Mr. Noel by placing him in handcuffs *before* he searched Mr. Noel's vehicle.[10] Moreover, at the time Officer Adams searched the vehicle's closed console, Mr. Noel was not in reaching distance of the passenger compartment of his car. *See Gant,* 556 U.S. at 343 n. 4, 129 S.Ct. at 1719 n. 4, 173 L.Ed.2d 485 ("Because officers have many means of ensuring the safe arrest of vehicle occupants, it

---

10. Other courts considering whether an arrestee who is handcuffed, but who remains near his/her vehicle at the time of the warrantless search, rather than being placed in the officer's patrol car, is secured also have concluded that the arrestee has been secured as contemplated by *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). *See Canino v. State,* 314 Ga.App. 633, 725 S.E.2d 782 (2012) (driver charged with reckless driving was handcuffed and standing next to open driver's door of vehicle during warrantless search; *Gant* requirements found not satisfied because driver was secured, not within reaching distance of car, and car would not have contained evidence of reckless driving). *See also Commonwealth v. Perkins,* 465 Mass. 600, 989 N.E.2d 854 (2013) (vehicle search without warrant found unlawful where driver was secured by handcuffs, was standing near car but could not access it, and evidence of arrest for traffic violation not likely to be found in car); *State v. VanNess,* 186 Wash.App. 148, 344 P.3d 713 (2015) (warrantless search of arrestee's backpack not proper where arrestee was handcuffed and standing at rear of vehicle, but could not access backpack placed on vehicle's

trunk and arrest was made for outstanding warrants). *Cf. United States v. McCraney,* 674 F.3d 614 (6th Cir.2012) (warrantless vehicle search not proper because unhandcuffed driver was standing near trunk of car, was not within reaching distance of vehicle's passenger compartment, and it was unreasonable to believe evidence of traffic violation would be found inside vehicle). *But see United States v. Sellers,* 897 F.Supp.2d 754 (N.D.Ind.2012) (warrantless vehicle search proper where driver was standing at trunk of car, was not handcuffed, had informed police he had a weapon, and was subject of ongoing drug investigation); *Robinson v. State,* 407 S.C. 169, 754 S.E.2d 862 (2014) (search of vehicle without warrant proper where driver was handcuffed and standing at rear of vehicle, but police had seen handgun inside the vehicle when the occupants exited the car and driver and occupants were wanted in connection with armed robbery); *State v. Snead,* 326 Ga.App. 345, 756 S.E.2d 581 (2014) (warrantless search of vehicle proper to secure scene where unhandcuffed driver was outside of vehicle, but police had seen driver holding firearm inside car).

will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." (citation omitted)). Finally, it was unreasonable to believe that Mr. Noel's vehicle contained evidence of the offense of his arrest, *i.e.*, fleeing with reckless indifference. Therefore, Officer Adams' warrantless search of Mr. Noel's vehicle incident to his arrest for fleeing was unlawful under *Gant*, and the circuit court should have suppressed the evidence found during this search.

Furthermore, Officer Adams' warrantless search of Mr. Noel's vehicle was not lawful under this Court's prior holdings in *Flint*. Under Syllabus point 2 of *Flint*, a vehicle search without a warrant is proper only if probable cause exists that the vehicle contains a weapon, contraband, or evidence of the commission of a crime and exigent circumstances exist. 171 W.Va. 676, 301 S.E.2d 765. In the case *sub judice*, Officer Adams originally initiated the traffic stop to check the safety of Mr. Noel's vehicle and then effectuated the stop based upon Mr. Noel's flight. Officer Adams had no probable cause to believe that Mr. Noel's vehicle contained either a weapon or contraband, and evidence of the crime of arrest, *i.e.*, fleeing with reckless indifference, would not have been found in the vehicle; neither were exigent circumstances present. Moreover, much of Officer Adams' justification for the warrantless vehicle search was based upon Mr. Noel's repeated glances towards the interior of his car and, specifically, its center console. As we held in Syllabus point 3 of

*Flint*, such furtive gestures, without the presence of contraband or evidence of criminal activity, is not sufficient justification for a warrantless vehicle search. *Id.*

Accordingly, we find that the subject warrantless vehicle search was not lawful and that the circuit court erred by refusing to suppress the evidence resulting therefrom.[11] Therefore, we reverse Mr. Noel's convictions and resultant sentences and remand this case for a new trial.[12]

## IV.

## CONCLUSION

For the foregoing reasons, the circuit court's January 30, 2014, sentencing order, as corrected by its March 18, 2014, amended sentencing order, is hereby reversed, and this case is remanded for a new trial.

Reversed and Remanded.

Justices BENJAMIN and KETCHUM concur and reserve the right to file concurring opinions.

Justice LOUGHRY dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice, concurring:

I concur with the majority opinion. I write separately to address any contention that the illegal narcotics sought to be suppressed would have inevitably been discovered during the police's inventory search of the subject vehicle even had Officer Adams scrupulously complied with *Arizona v. Gant*, 556

---

11. Although Mr. Noel has not addressed this issue, the State alternatively contends that Officer Adams' search of Mr. Noel's vehicle was proper as an inventory search. We disagree. The State has not demonstrated that Officer Adams saw any item of value in Mr. Noel's vehicle that would have justified an inventory search. *See* Syl. pt. 2, *State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980) ("An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.").

12. Having concluded that the circuit court improperly admitted evidence that was used to convict Mr. Noel and that he is entitled to a new trial in which such evidence is suppressed, we need not consider his second assignment of error re-

garding the propriety of the *Neuman* colloquy conducted by the circuit court. However, during the retrial of this case, the circuit court should ensure that it complies with the protections afforded by *Neuman*. *See* Syl. pt. 7, *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988) ("A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.").

U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), by not conducting a search of the passenger compartment incident to Mr. Noel's arrest. The majority opinion properly concludes that the State failed to carry its burden to prove that the police conducted a valid inventory search of the vehicle that would have excused them from first obtaining a warrant. In so doing, the majority dispels any notion that inventory searches should routinely afford a governmental agency a license to nullify the protections against unreasonable searches and seizures provided by the Fourth Amendment and by Section 6 of Article III of the West Virginia Constitution. In other words, an inventory search may not be used simply as a mechanism of convenience by the State to avoid the warrant requirement of our federal and state constitutions.

The seminal case by this Court addressing the issue of an inventory search of an automobile is *State v. Goff,* 166 W.Va. 47, 272 S.E.2d 457 (1980). In *Goff,* the defendant was arrested for breaking and entering into a used car dealership after his accomplice was discovered on the accompanying lot driving one of the dealership's automobiles. The defendant himself was found seated in a pickup truck parked elsewhere on the lot, and both men were transported to jail. Thereafter, the police conducted an inventory search of the pickup, whereupon they discovered the title to the dealership's automobile in the truck's glove compartment. The title was admitted into evidence at the defendant's trial. On appeal of his conviction, the defendant asserted, *inter alia,* that the inventory search was illegal, requiring suppression of the title. The issue presented was one of first impression for this Court. To resolve it, we looked to the decision of the United States Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

In *Goff,* we noted at the outset the *Opperman* Court's acknowledgment that, under the proper circumstances, a warrantless inventory search of a vehicle could be made. The decision in *Opperman* justified an inventory search on the grounds of (1) protecting the owner's property while it remains in police custody; (2) protecting the police against claims of property being stolen; and (3) pro-

tecting the police from potential danger. *Opperman* also made clear that an inventory search is not a license for government officials to avoid the requirements of the Fourth Amendment respecting lawful searches and seizures. *Goff* recited from *Opperman* the following limitations to the inventory search:

> The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car.... [T]here is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

*Goff,* 166 W.Va. at 55 n. 3, 272 S.E.2d at 463 n. 3 (quoting *Opperman,* 428 U.S. at 375–76, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009).

As a result of the limitations imposed by *Opperman,* we adopted the following guidelines for conducting an inventory search in West Virginia in syllabus points 1 and 2 of *Goff:*

> 1. The right to an inventory search begins at the point where the police have a lawful right to impound the vehicle.

> 2. An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.

We applied these guidelines in *Goff* and concluded that the inventory search in that case was unlawful:

> Even if we were to assume that there had been an actual lawful impoundment of the truck, the inventory search would not be proper in this case because there was no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.

> \* \* \*

The basis for this rule is that unless some personal property is seen in plain view in

the vehicle there is little, if any, basis for an inventory search. The purpose for a routine police inventory search is to secure personal property from being stolen or lost while the car is in custody, but without any visible personal property there is a diminished likelihood that the car will be broken into. On the other hand, it must be remembered that once the vehicle has been impounded the police have the right to secure it by rolling up the windows and locking the doors. Any personal property seen in the course of this action can lead to a fuller inventory search.

*Goff,* 166 W.Va. at 51–53, 272 S.E.2d at 461–62.

We relied on *Goff* to reverse a conviction in *State v. Perry,* 174 W.Va. 212, 324 S.E.2d 354 (1984). The defendant in *Perry* was arrested for driving without a license, and his vehicle was impounded. During the subsequent inventory search, the police found a bag of marijuana in the trunk of the vehicle. The State sought and successfully obtained the vehicle's forfeiture on the ground that it had been used to facilitate a crime. On appeal, the defendant maintained, *inter alia,* that the inventory search was unlawful because the police did not give him the option of having someone retrieve the car, rather than impounding it. We concurred in the defendant's position:

> Courts have held that a driver must be given a reasonable opportunity to make some alternative disposition of the vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage.... We agree with this principle, although as we have previously stated, the duty to consult with a driver concerning the disposition of his vehicle does not exist in every impoundment situation.... However, in the situation where the owner or possessor of a vehicle has been arrested in or near his car, ordinarily, he must be given a reasonable opportunity to make some alternative disposition of the vehicle before the police may impound it for the sole purpose of protecting it and its contents from theft or damage.

\* \* \*

In this case, we find that the arresting officer did not have a ground for impound-ment that would enable him to avoid giving the driver a reasonable opportunity to make an alternative disposition. The failure to permit such alternative disposition renders the impoundment and subsequent inventory search invalid. We specifically base this requirement, as we did in *Goff,* on Section 6 of Article III of the West Virginia Constitution.

*Perry,* 174 W.Va. at 217–18, 324 S.E.2d at 359–60.

To reiterate, our decision in *Perry* requires that the arrested driver ordinarily be given a reasonable opportunity to arrange to have the vehicle removed by means other than police impoundment. If the vehicle is nonetheless impounded, then *Goff* authorizes an inventory search of a vehicle only when items of personal property are in plain view within. Moreover, controlling precedent strongly suggests that inventory searches so authorized be conducted pursuant to established procedures. In *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Supreme Court of the United States concurred with *Opperman's* assessment of the reasonableness of warrantless inventory searches based on "caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Bertine,* 479 U.S. at 372, 107 S.Ct. at 741, 93 L.Ed.2d at 746.

Indeed, in *Opperman,* the Court discussed with approval its prior decision in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), distilling therefrom that protective inventory searches should be "carried out in accordance with *standard procedures* in the local police department, a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function." *Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008 (emphasis in original). The requirement was met in *Opperman* by virtue of the searching officers having followed "standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts." *Opperman,* 428 U.S. at 376, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008.

That vehicles are routinely impounded and searched, regardless of circumstances, does not equate to the implementation and observance of routine, standardized procedures in the conduct of such searches. We made that clear in *State v. York*, 203 W.Va. 103, 506 S.E.2d 358 (1998), in which we reversed the circuit court's failure to suppress the evidence seized during an inventory search, where the chief of the police department testified that "inventory searches were routinely conducted of impounded vehicles" and that he would have conducted the particular search at issue regardless of whether he had seen any personal property in plain view inside the subject vehicle. *See id.*, 203 W.Va. at 106, 109, 506 S.E.2d at 361, 364.

On a motion to suppress, "[w]hen the State seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *State v. Lacy*, 196 W.Va. 104, 111, 468 S.E.2d 719, 726 (1996). In the case at bar, the State put forth no evidence that the police legitimately saw any item of value in the vehicle driven by Mr. Noel, no evidence that he was asked whether he wanted to make arrangements to have the vehicle removed, and no evidence that the impoundment and inventory search were conducted pursuant to any standards or procedures adopted by the Bluefield Police Department or the City of Bluefield.

Indeed, the only authority I could find potentially governing the situation was a City ordinance permitting the impoundment of vehicles that have been wrecked, abandoned, illegally parked, or otherwise found to be in violation of legal requirements, in which case the impounding officer "is authorized to do every act, including entry into such vehicle, which may be reasonably necessary to effect such impounding." Bluefield, W. Va., Code of Ordinances § 40-13 (1974). The ordinance does not address impoundment of a vehicle associated with a moving traffic violation, and it provides no standards or procedures to assist a police officer who might conduct an inventory search pursuant to such an impoundment. Officer Adams' testimony at the suppression hearing that his department's police officers, presumably as a matter of routine, simply "do inventories on cars that we tow" underscores the lack of standards or procedures necessary for consideration of an exception to the warrant requirement herein.

Any alternative disposition of this appeal is therefore controlled in substantial part by our decision in *York* disapproving of routine inventory searches, and in the remainder by our decisions in *Goff* and *Perry* requiring, respectively, that such searches, when appropriate, be triggered by the need to secure observable personal property and that arrested drivers be reasonably given an alternative to impoundment for disposing of their vehicles. In the final measure, this court is obliged to respect and give effect to the limitations on government actions contained within our federal and state constitutions, and to ensure that inventory searches not simply be "a ruse for a general rummaging in order to discover incriminating evidence." *Whren v. United States*, 517 U.S. 806, 811, 116 S.Ct. 1769, 1773, 135 L.Ed.2d 89 (1996).

Justice KETCHUM concurring:

I fully agree with the majority's resolution of this case. I write separately to point out that there is an "automobile exception" to the warrant requirement that was not raised in this case. The automobile exception may be used by a police officer under our new holding in Syllabus Point 2. In Syllabus Point 2, the majority holds:

Pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 174 [173] L.Ed.2d 485 (2009), police may conduct a warrantless search of a vehicle incident to a recent occupant's arrest only if (1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest. If these justifications are absent, a warrantless search of an arrestee's vehicle will be unreasonable unless police obtain a warrant **or show that another exception to the warrant requirement applies.**

(Emphasis added).

The United States Supreme Court created the automobile exception to the warrant re-

quirement in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In *Carroll,* the Court held that because of the mobility of an automobile, and the diminished expectation of privacy in an automobile, warrantless searches can be justified under certain conditions. For instance, police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity. *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause deals in probabilities that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Under the automobile exception, police officers may search for evidence of any crime, not just of the offense that provided the basis for the arrest. *United States v. Baker,* 719 F.3d 313, 319 (4th Cir.2013).

While police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). A warrantless search of an automobile must be reasonable in light of the diminished expectation of privacy that a person may have in his automobile as weighed against any exigent circumstances that may exist in a particular case.

LOUGHRY, J., dissenting:

I dissent from the majority's overly simplistic and erroneous conclusion that the petitioner's conviction should be reversed pursuant to *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In its haste to invalidate the officer's search of the vehicle, the majority failed to thoroughly consider whether the evidence at issue would have been inevitably discovered during a lawful inventory search following the petitioner's arrest. In that regard, it is well-established that "the inventory search constitutes a well-defined exception to the warrant requirement." *Illinois v. Lafayette,* 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Furthermore, the United States Supreme Court has long held that "when, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In this case, the majority has failed to undertake any analysis of the law concerning inventory searches. As such, its legally incomplete and unsound conclusion that the evidence should have been suppressed is simply wrong.

Although *Gant* may preclude a finding that the evidence was obtained through a reasonable search incident to a lawful arrest, even a first-year law student knows that the legal analysis does not end there. The majority acknowledged in its new syllabus point that the evidence may be admissible if another exception to the warrant requirement applies; yet, it summarily concluded that the trial court erred by refusing to suppress the evidence pursuant to *Gant.* Blithely dismissing the State's contention that the evidence would have been recovered pursuant to a valid inventory search, the majority misapplied this Court's decision in *State v. Goff,* 166 W.Va. 47, 272 S.E.2d 457 (1980).

The majority's entire discussion of *Goff* and the law related to inventory searches is relegated to a footnote at the end of the opinion. In that skeletal footnote, the majority concludes that an inventory search was not justified by simply citing syllabus point two of *Goff* which states: "An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search." 166 W.Va. at 47, 272 S.E.2d at 459. In doing so, the majority completely overlooked the legal analysis underlying that holding. In *Goff,* this Court recognized that

the rationale for an inventory search is threefold: "(1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger." 166 W.Va. at 49, 272 S.E.2d at 459 (citing *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). In the case at bar, the majority noted that Officer Adams testified "that [the petitioner] repeatedly glanced inside his vehicle and at the vehicle's center console." Critically, the majority ignored the fact that such behavior would obviously lead a reasonable police officer to conclude that the petitioner was concerned about some item of personal property located in the center console. Given the fact that the vehicle was being taken into police custody because there was no one else to remove it from the scene, and given the arresting officer's awareness of the petitioner's apparent concern over the contents of the center console, any reasonable person would conclude that an inventory search was appropriate.

It is also important to note that at the time *Goff* was decided in 1980, it was recognized that there was a "divergence of opinion" as to when an inventory search could be initiated. 166 W.Va. at 52, 272 S.E.2d at 461. A significant number of courts have since firmly adopted the view that when the police have the authority to impound a vehicle, they have a concomitant right to examine and inventory the vehicle's contents without a warrant. *See United States v. Jackson,* 682 F.3d 448, 455 (6th Cir.2012) ("It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."); *United States v. Clinton,* 591 F.3d 968, 972 (7th Cir.2010) ("Police who lawfully impound a vehicle may take an inventory search of its contents, because they are responsible for those contents while the car and its contents are in their custody."); *United States v. Kimhong Thi Le,* 474 F.3d 511, 515 (8th Cir.2007) ("Law enforcement may search a lawfully impounded vehicle to inventory its contents without obtaining a warrant."); *United States v. Kinzalow,* 236 Fed.Appx. 414, 420 (10th Cir.2007) ("When a vehicle is legally impounded, police may, following standardized procedures and in the absence of bad faith, perform an inventory search of the contents of the vehicle."); *United States v. Morris,* 179 Fed.Appx. 825, 827 (3rd Cir. 2006) ("An inventory search conducted by the police before the vehicle is towed is lawful if the police have grounds for impounding or otherwise taking custody of the vehicle, and the search is conducted pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from the owner's later accusations of theft, loss or damage."); *United States v. Pappas,* 452 F.3d 767, 771 (8th Cir.2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."); *United States v. Kennedy,* 427 F.3d 1136, 1143 (8th Cir.2005) ("Police may conduct a warrantless search of a lawfully-impounded vehicle even in the absence of probable cause."); *United States v. Stanley,* 4 Fed.Appx. 148, 150 (4th Cir.2001) ("An inventory search, even if not thorough and complete, satisfies the Fourth Amendment if administered in good faith."); *West v. Duncan,* 179 F.Supp.2d 794, 803 (N.D.Ohio 2001) ("[P]olice may search a vehicle properly impounded or towed in order to establish the contents of the car."); *United States v. Logan,* 744 F.Supp. 735, 746 (N.D.Miss.1990) ("Reasonable inventory procedures administered in good faith do not violate the fourth amendment.").

Furthermore, many other courts have found evidence to be admissible pursuant to the inevitable discovery doctrine based on inventory search procedures. "In such cases, the court typically concludes that even if the invalid search had not been conducted, the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized, established procedures." *United States v. Mendez,* 315 F.3d 132, 138 (2nd Cir.2002). For example, in *Mendez,* the defendant was convicted of "possession of a firearm as a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)." 315 F.3d at 133. The defendant appealed his conviction, arguing that the trial court erred in failing to suppress the gun because the police lacked probable cause to search the glove compartment of his automobile where the

evidence was located. 315 F.3d at 133. He further asserted that the evidence was not admissible under the "search-incident-to arrest exception" to the exclusionary rule. *Id.* While the appellate court found that the evidence had been unlawfully obtained, it nonetheless affirmed the defendant's conviction because "the evidence would have inevitably been discovered in a valid inventory search." 315 F.3d at 139. The court explained that "[h]ad the two officers not found the evidence during the earlier searches, they would inevitably have found it in the course of a valid inventory search, which [Officer] Foster would subsequently have made. Thus, the evidence was properly admitted under the inevitable discovery exception to the exclusionary rule." *Id.*

In *United States v. Cartwright*, 630 F.3d 610 (7th Cir.2010), which is more factually similar to the case at bar, the defendant was stopped for failure to have an illuminated rear license plate. *Id.* at 612. Upon being pulled over, the defendant was placed under arrest because he refused to identify himself or produce a driver's license. *Id.* The officer then searched the car incident to the arrest and discovered a weapon that the defendant later moved to have excluded from evidence pursuant to *Gant. Id.* Upon review of all relevant law, including *Gant,* the Seventh Circuit found that, in light of the defendant's arrest, the vehicle required impoundment[1] and, therefore, was subject to an inventory search that would have inevitably led to the discovery of the weapon. *Id.* at 614. The court rejected the argument that the officer's failure to properly prepare an inventory of the vehicle nullified the search explaining that "minor deviations from department policy do not render an inventory search unreasonable." *Id.* at 616.

Several other courts have also concluded that *Gant* does not undermine the inventory search exception or the inevitable discovery doctrine. *See United States v. Bogle*, 522 Fed.Appx. 15, 20–21 (2nd Cir.2013) ("Although we are skeptical that the subsequent search of Bogle's Jaguar at the scene of the arrest can also be justified as a search incident to arrest [pursuant to *Gant* ], we need

not reach the issue here. The officers properly impounded Bogle's car then performed a routine inventory search, during which the round recovered from the floor of the passenger seat during the challenged search would inevitably have been discovered." (citations omitted)); *United States v. Hairston,* 409 Fed.Appx. 668, 670 (4th Cir.2011) ("We need not reach the *Gant* issue as the evidence obtained from the vehicle search is admissible under the inevitable discovery doctrine.... In this case, if the officer had not conducted a search incident to arrest, an inventory search of the car would have been conducted, wherein the evidence in question would have been discovered."); *United States v. Contreras,* 348 Fed.Appx. 263, 264– 65 (9th Cir.2009) ("We hold that the search of Contreras' car violated the Fourth Amendment because Contreras was not within reaching distance of the passenger compartment at the time of the search and it was not reasonable for police to believe that the car contained evidence of Contreras' offense.... Nonetheless, we affirm the ruling below because the district court did not clearly err in finding that police inevitably would have discovered the contraband at issue."); *United States v. Garreau,* 735 F.Supp.2d 1155, 1166 (D.S.D.2010), *aff'd,* 658 F.3d 854 (8th Cir. 2011) ("[A]lthough the handgun was found during a search incident to arrest contrary to *Gant,* the handgun would have been inevitably discovered as part of an inventory search following the arrest of Garreau for driving with a suspended license and on the outstanding warrant.... Due to his arrest and inability to identify anyone who could pick up the vehicle from the site of the arrest, Garreau's vehicle would have been inevitably impounded, thereby mandating an inventory of the vehicle's contents."); *United States v. Morillo,* 2009 WL 3254431 at *8 (E.D.N.Y. Oct. 9, 2009) ("[T]he gun is also admissible because the arresting officers would have inevitably found it during a later inventory search of Morillo's backpack at the stationhouse.... [T]he [inevitable discovery and inventory search] doctrines may be combined

---

1. The owner of the automobile was a passenger, but she was unlicensed and, therefore, unable to move the car.

to admit evidence under a theory of inevitable discovery in an inventory search.").

In syllabus point four of *State v. Flippo*, 212 W.Va. 560, 575 S.E.2d 170 (2002), this Court held:

> To prevail under the inevitable discovery exception to the exclusionary rule, Article III, Section 6 of the West Virginia Constitution requires the State to prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct; (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct; and (3) that the police were actively pursuing a lawful alternative line of investigation to seize the evidence prior to the time of the misconduct.

Applying these requirements to the facts of this case, it is clear that law enforcement would have inevitably discovered the drugs in the center console of the vehicle. Prior to the time Officer Adams opened the center console, he already possessed the evidence that led to the petitioner's arrest and conviction for fleeing in a vehicle. In that regard, Officer Adams had signaled his lights and sirens for the petitioner to stop but instead the petitioner initiated a high-speed chase through traffic and residential neighborhoods. The petitioner's arrest for fleeing alone required the impoundment of his vehicle and an inventory search because no person was available to remove the vehicle.[2] Given these facts, there was more than a "reasonable probability" that the drugs in the center console would have been discovered in a lawful inventory search resulting from evidence possessed by Officer Adams at the time he opened the center console. Moreover, the drugs would have been discovered in a "lawful alternative line of investigation" as an inventory of the vehicle would have, and did, follow the petitioner's arrest for fleeing in a vehicle. As Officer Adams testified,

> We did an inventory check of the car. We actually do inventories on cars that we tow for the fact that we like to know what's in them so someone can't say that something turned up missing after the fact, or that the towing company stole something out of their vehicle at that time.

In light of the foregoing, I would have affirmed the petitioner's convictions based on the fact that the drug evidence would have been inevitably discovered during a valid inventory search of the vehicle. Had the majority actually undertaken any legal analysis of this Court's prior holding in *Goff*, it surely would have concluded that an inventory search was appropriate. In fact, it is hard to imagine any reasonable jurist concluding otherwise given the petitioner's constant obsession with the vehicle's center console.

Notwithstanding the fact that this evidence should have been admissible under *Goff* and *Flippo* as it would have been obtained pursuant to a subsequent valid inventory search, this Court should have taken the opportunity to revisit *Goff*'s more restrictive holding regarding the propriety of inventory searches. The majority missed the perfect opportunity to bring West Virginia's criminal jurisprudence in line with the rest of the country. The view now taken by a majority of courts, as discussed herein, represents a more reasoned approach to inventory searches in the context of law enforcement as it exists today. Instead, the majority has merely relied upon *Gant* without any consideration of the likelihood that the evidence in question would have been discovered as part of a valid inventory search. Such an approach represents the worst kind of result-oriented jurisprudence. In effect, the majority was looking for a way to reverse the petitioner's drug convictions and refused to even consider the substantial authority which establishes that the search was constitutionally valid.

Accordingly, I respectfully dissent.

2. The petitioner indicated that the vehicle belonged to the his girlfriend who lived in Beckley, West Virginia.